14072

FREE v. LIFE. INS. CO. OF VIRGINIA

(180 S. E., 28)

*Messrs. Williams & Busbee,* for appellant,

*Messrs. Hendersons & Salley,* for respondent,

May 24, 1935.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

We gather the following from the record in this case: On June 14, 1926, the defendant company insured the life of one George Turner in the sum of $210.00; Willie Free, his nephew, being designated as beneficiary. Free paid all premiums, which were payable weekly in advance, to August

11, 1930; the payment on that date being the last one made. With the allowed four-week period of grace included, the policy, therefore, lapsed on or about September 15, 1930.

The insured, during the summer of 1930, disappeared from the Aiken County Home where he had been living, and a diligent search on the part of the authorities and others failed to disclose his whereabouts. In February, 1932, however, a human skeleton was found in the woods about two miles from the town of Montmorenci, in Aiken County, and with it were a pair of shoes, and buckles from a pair of overalls. The skeleton was identified by the nephews of Turner as his, and was claimed and buried by them. Thereafter, proofs of his death were filed as required by the policy, but payment of the insurance was refused. The beneficiary then brought this action to enforce collection, alleging the issuance of the policy, the due payment of all premiums, the death of the insured, and the refusal of the insurer to pay. The company interposed a general denial and demanded strict proof of the allegations of the complaint.

On trial of the case, the defendant moved for a directed verdict on the following grounds: (1) That the time of the death of the insured was left by the evidence to conjecture and surmise; (2) that the testimony affirmatively showed that the insured was alive when the policy became void for nonpayment of premiums. The Court granted the motion, and from judgment entered on the directed verdict this appeal is taken.

Two questions are presented for consideration: (1) Did the trial Judge commit error in not admitting the opinion testimony of the witness Thompson? (2) Was he wrong in refusing to submit the case to the jury?

As to the first question: C. M. Thompson, the superintendent of the Aiken County Home, testified that Turner, who was an inmate at that place, disappeared some time in June, 1930, and could not thereafter be located, although a thorough search was made for him throughout the county;

that in February, 1932, in the woods near the town of Montmorenci, the witness saw a human skeleton, and with it a pair of shoes of the kind issued at the home; and that Turner was wearing such shoes when he went away; that some overall buckles were also found with the skeleton, and that the insured had on overalls when he disappeared; that Turner had a very small skull, which was the size of the one found in the woods; and that no other white man had left the home after June 30th who had not been found.

After the witness had testified as indicated, counsel for plaintiff asked him what was his opinion as to whose skeleton it was. Upon defendant's objection, however, the trial Judge refused to permit him to answer the question, stating that he thought the witness should have more facts than he had upon which to base an opinion. The appellant contends that this was error, for the reason that the facts given were sufficient for that purpose.

While we think that Thompson should have been allowed to give his opinion in the matter, it appears that the error complained of was harmless. An examination of the record discloses that the matter of identity played no part in the conclusion reached by the Court that a verdict should be directed; the motion being granted upon an entirely different ground. Unquestionably, if the only issue before the trial Judge had been one of identity, he would have unhesitatingly, under the evidence, submitted it to the jury.

As to the second question: In granting defendant's motion for a directed verdict, the trial Court did so on the ground that there was no evidence on the part of the plaintiff directly fixing the time of Turner's death, looking at it in the most favorable light, while the positive testimony of Walker, a nephew of the deceased and his wife, offered by the defendant, that the insured had been at their home some time about the latter part of September, 1930, left no other

conclusion than that he was living at the time the policy lapsed, on or about September 15th.

The appellant argues that Judge Johnson was in error for two reasons: (1) In assuming that the testimony of Walker and his wife conclusively showed that the insured was not dead at the time the policy lapsed, as all the circumstances, as shown by the evidence, point to the conclusion that the Walkers were in error, and made an issue of fact for the jury as to the time of Turner's death; and (2) in not submitting the question of waiver to the jury, as there was positive testimony that the company, while the policy was still in force, refused to accept the payment of the premiums tendered it by the beneficiary.

There was testimony to the effect that the skeleton was found in a low swamplike place. The deputy sheriff stated that "the bones were mighty dry and looked like they had been there a long time." The coroner testified that "the bones were at a kind of head of a swamp down in a low place," but that "the woods were not particularly thick right in there." Dr. Boone stated that he examined the skeleton and that he saw it before it was removed from the woods; and that in his opinion the bones could have been bleached entirely during the summer of 1931, but that if they were protected from the sun, it was possible that they could have been there a year and a half or two years.

Huckabee, who was married to a niece of the deceased, testified that it was about June 1, 1930, when he was notified that his uncle had left the poor house; that previously, when he did so, he would visit the wife of the witness and would then go to his nephews, Willie and Dave Free, "from one place to the other"; that when he disappeared in June, the witness and the superintendent of the county home tried to find him; and that "we published in the newspapers and put his picture in the paper and I went to Augusta and broadcast it over the radio that he was missing and we never saw him any more."

As to the physical condition of Turner about the time that he left the county home, G. W. Burgess testified that he had known the insured for 35 or 40 years, and that a short while before he disappeared he was down in the community where the witness lived and came by his home and talked with him; and that he looked like he had had a stroke of paralysis, or something, as "he did not talk as plain as he did before."

W. J. McGarrity stated that in 1930 he was the superintendent of the Aiken Institute; that the institute opened its fall session on the second Monday in September, the 8th of the month, and that "I had several of the children of John E. Walker enrolled that year."

Walker, the nephew, said that he lived at the freight depot in 1930, down in front of the Aiken Lumber Company plant, and that George Turner was his uncle; that two or three weeks after school started Turner came to his house and stayed about a week, and then went away and came back in about two weeks; that he told Thompson, the superintendent of the home, when he came by looking for the insured, that he had been there and had left the day before; that he told Will and Dave (nephews of the deceased), and all that came, that Turner had just left the home of the witness; that he did not see the picture of the deceased in the paper, and did not hear or know that he was being looked for before Thompson and the others came to his house and told him; and that he did not know where the deceased was during the months of July and August, as he had not seen him before the time testified to.

Nettie Walker stated that she knew Turner, her husband's uncle, and remembered his coming to her home in September, 1930, but did not recall the date; that he stayed a week the first time, and then went away for two weeks and came back; that she knew her children were going to school the last time he came, and that both visits were in the month of September; that he had not been at her home before for

years until he made these visits; and that she did not tell anybody that he had been to her place in September, although she knew that he had left the poor house in June and that they were hunting for him.

We may say here that the case at bar was tried with another, Huckabee against the same company, in which the defendant's motion for a directed verdict was overruled. The testimony in the two cases was exactly the same, except in the *Huckabee case* it was conceded that the beneficiary paid the premium due December ·15, 1930. It seems clear, therefore, that if Walker and his wife had not testified as they did, the trial Judge would have also submitted the *Free case* to the jury. We may add that in the *Huckabee case* the jury found for the plaintiff, and on appeal we affirmed the judgment; the Court holding that the testimony was reasonably susceptible of the inference that the insured died before the policy lapsed on January ·19, 1931.

In 17 C. J., 1176, it is said that "in civil cases, death, like any other fact, may be proved by· circumstantial evidence"; and·in 8 R. C. L., 712, that "the evidence need not be direct or positive, but it must be of such a character as to make it more probable that he died at a particular time than that he survived."

In *Canady v. George,* 6 Rich. Eq., 103, the Court said: "The lapse of seven years, however, raises merely the presumption of death without absolutely fixing the date of it, at one rather than another day of the seven years, and leaves the date to be inferred from all the circumstances of each particular case."

In 17 C. J., at 1176, it is said: "Thus any facts or circumstances relating to the habits, character, condition, affections, attachments, prosperity, and objects in life, which usually control the conduct of men and are the motives of their actions, are competent evidence from which may be inferred the death of one absent and unheard from, whatever may have been the duration of such absence, but these

facts must have occurred, or the character have been recognized, within such reasonable time prior to the death sought to be proved that they may justly be supposed to afford some light tending to establish or refute it, for remote acts as well as remote consequences are excluded. The age as well as the habits and health of the absentee may also be considered."

In the case at bar, we are of opinion that the facts and circumstances, as disclosed by the evidence, made a jury question as to the time of the death of the insured; the issue of identity not being seriously contested. Turner was over 50 years of age, and Burgess testified that when he saw him just before his final disappearance, he seemed to be in bad health. It appears from the testimony that it was his custom to visit those of his family to whom he was attached and to whom he had made his insurance, but that he did not do so after he left the home in June. It was also undisputed that a thorough search was made by the authorities and others to locate him, which Thompson testified was done before September; and that notices of his disappearance, with his picture, were put in the newspapers, and a broadcast was made over the radio in an effort to discover his whereabouts; from all of which it might be inferred that if he had been alive during that time some one would have seen him and reported the fact, as the skeleton alleged to be his was found within the confines of Aiken County.

In any event, we do not think that the testimony of Walker and his wife, in the face of all the facts and circumstances shown, was at all conclusive that the insured did not die before September 15, 1930. They undertook to fix the time of his alleged visits by reference to some other time, namely, the opening of the Aiken Institute, September 8th, as testified to by the head of that institution. No exact date of such visits could be fixed by them, and the question

whether they were in error or confused as to the time was a matter for the jury.

In addition to this, Willie Free, the beneficiary, ■ testified that before the policy lapsed he offered to pay the defendant's agent, who usually made the collection, the premium for one month, but that he refused to take the money because the insured "was gone." T. J. Beard, a witness for the plaintiff, stated that he was present at the time, and that such offer was made by Free and refused by the agent. We are of opinion that this testimony made a question of fact for the jury as to whether the defendant waived the payment of the premium.

The judgment of the Circuit Court is reversed, and the case remanded for a new trial.

MESSRS. JUSTICES CARTER and BONHAM and MESSRS. ACTING ACTING JUSTICES T. S. SEASE and A. L. GASTON concur.